Good morning. May it please the Court, Amy Baggio appearing this morning on behalf of Defendant Appellant David Olander. I'd like to request to reserve two minutes of rebuttal, please. The Supreme Court's decision yesterday, and the Flores-Figueroa decision, provides another example of how important legislative history can be in interpreting a statute. That Court's decision, consistent with this Court's decision in amalgamated transit, speaks to the importance of looking at not only the text and context of the statute, but also legislative history, where it is important evidence of Congress's intent. Can you also address the Supreme Court's recent decision in D&D United States, where the majority says, we ordinarily resist reading words or elements into a statute that do not appear on its face? Yes, Your Honor, I would be glad to. In the Dean decision, the Supreme Court did not state any new rule of statutory construction, and I would certainly agree that we do not ordinarily read elements into a statute where they don't already appear. The difference in the Dean decision versus the situation we have before the Court today is they're two very different statutes. And whereas the text and context in Dean answered the question conclusively, here we have a different statute that sets out different spheres of conduct in the different clauses, and consistent with the Supreme Court's decision in excitement video, where the Court looked to the legislative history, the same types of legislative history that were cited in Mr. Olander's brief, in order to interpret how far the word knowingly carried down the statute. I submit that both excitement video and this Court's decision in United States v. Adams were also in interpreting the child pornography law, as opposed to the 924C interpretation in United States v. Dean. But again, we're talking about child pornography law here. And under excitement video and under United States v. Adams, those cases do look to the legislative history. So whereas the defendant in Dean loses based on the text of the statute. Kagan. I wanted to read intent into the statute that it had to be intentionally discharged, not accidental. And the Court said we don't see the word intent in the statute, and it's clear, and we just stopped there. So it seems to be pretty much on all fours with the argument that you're making here. Well, Your Honor, I think another distinguishing characteristic from the Dean case and our case is that the — I believe it was Justice Roberts who wrote the Dean decision, and he said that there is no limiting language in the 924C provision. There's no knowingly. There's no intent whatsoever. Here, we do have the knowingly language, and I think it's an important distinction, because as the statute was originally written, receives for commercial purposes. Here's my problem with your argument. I'm quite convinced that Congress made a mistake, that insofar as we can attribute intent to some inchoate body, let alone Congress, it did not intend to punish receipt only as receipt more severely than possession, because while those terms have different meanings, if you're going to receive, you're also going to possess. And it's clear that at an earlier time, it said receipt with the intent exchanged for commercial purposes. They realized, well, a lot of this stuff is exchanged without commercial motivation, so they take out the commercial, but then they take out too much, so they simply leave the word receives. I'm utterly convinced that this is the result of sloppiness on the part of whoever drafted it, whoever approved it, and so on. Nonetheless, the word we end up with is receives in combination with receives or distributes, and you're asking us to insert into the statute receives with a certain purpose, receives with a purpose to distribute. How do I get there when the word is simply receives all by itself? Your Honor, I think that we get there by looking at this statute, which applies mandatory minimum sentences for five of those six classes of conduct. And before we do that, and in light of that legislative history that so clearly shows what Congress's intent was, we need to take a step back in order to determine what's fair here. And before we send someone with no criminal record whatsoever to prison for 60 months for acquiring images, I think that it's important to be sure that that is what was intended here. And I think also, Your Honor, if we read the statute that way, what we're doing is we're rendering subclause 5, the possession clause, insignificant, because who then falls under mere possession? I mean, I understand all of those arguments, and I'm entirely sympathetic to these arguments, which is why I say I think Congress made a mistake. I don't think they intended to do this. But there's the word. Let me ask a slightly different question. The briefing has really been confined to the Ninth Circuit cases. And I'm assuming for the purpose of the questions here that what we've already decided leaves the ground clear for us to decide this as if it were a new question. And that may or may not be so. What do we know about other circuits? Obviously, this is a nationwide issue because it's a statute of nationwide application. What have the other circuits done on this question? Your Honor, I have not been able to find any case discussing this challenge that Mr. David Olander raised in challenging his receipt conviction under the statute. So I have not found any case that was discussing what we're raising here in any of the circuits. There was some discussion in prior case law when there were separate sentencing guidelines for possession versus the trafficking offenses, which was all of the other conduct, in which some of this legislative history was discussed. But, again, those were distinct arguments, and they were also cases that preexisted the Dean decision as well as the Flores-Figueroa decision, which I think what we have to look at here is, and in none of the sentencing context was anyone arguing how important it was that we're talking about mandatory minimum sentences for five of the six types of classes of conduct. And I think that's another characteristic that distinguishes this case from the situation in Dean. And regarding Your Honor's question about whether the Court was bound, if you would like, I could address that very briefly. In terms of prior case law, I recognize that there are the Mohrbacher decision, there's the Rahm decision, in which there were the Court's holdings had language that certainly the governments relied on to say that Mr. Olander loses. But I think that if we look at this Court's decision in Roman, it explains quite well. In Rome, which I have some familiarity with since I wrote it, the elements of receipt were discussed in the context of sufficiency of the evidence. Mr. Rome took the position that receiving 40 images of child pornography plus 2, 42 on his catch, not even on his hard disk, but just on the catch, was not receipt of child pornography. We held that it was. How is that case not binding on us, as the district court found to be binding? Certainly, Mr. Rome was not inventive, as Mr. Olander is, to say in order to intend or knowingly to receive, you have to have an intent how to use it after you've received it. He didn't make that argument. But we decided that simply receiving on the catch of the computer was the commission of the crime. Why isn't that so with Mr. Olinger? Because, Your Honor, similar to the situation in the Roman case, Mr. Rome did not present our argument, our issue. And I submit, Your Honor, that it is different, because the Court is only deciding the issue before it. The Court, I would suggest, assumed, because counsel did not bring the issue to the Court's attention, that receipt for distribution, that for distribution, knowing receipt for distribution was not required. It was just assumed. And as Your Honor would know from the Rome decision, that the Court there cited the Morbacher decision in which the defendant admitted or submitted without argument that receipt of an image was – I'm sorry, downloading an image was receipt. And also in Rome, Your Honor, the Court looked to other statutes in order to decide what – whether possession is the equivalent of receipt. And I think, if I may, point the Court's attention to those statutes, because they provide a very important example of how this is different. The dealing in counterfeit currency statute that the Court referenced in that decision, the stolen property statute that was referenced in that decision. Like the case as in 924C, we have a statute that lists a whole variety of verbs, whoever possesses, receives, distributes, in one paragraph. Here, our text and context is different because the clauses are set out differently. And so while the Court looked to other statutes in order to conclude that possession is receipt or knowingly acquiring is receipt, I think that the Court did so without the benefit of proper argument as to the context, the text, and the legislative history. So the Court instead looked to these other statutes to say, well, if it worked there, it worked here, but because those statutes are materially distinguishable, those that that reasoning couldn't be put to the side, as was done in the Roman decision, where the defendant said, this has been the law since 1956, I win here. And the Court said, no, this is a different argument. We're not stuck with the Steiner case because the argument here is different. And for that purpose, I would say that the ROM decision does not bind the Court. And if it does, then I would request perhaps the panel would refer this case to en banc consideration. Okay, let's hear from the government, and we'll give you a chance to respond. We've taken you over a little bit. Good morning. May it please the Court. Michelle Caron for the United States. In this case, the defendant asks this Court to rewrite the statute criminalizing the receipt of child pornography laws to include an intent element that was already eliminated by Congress. In the last four weeks, the Supreme Court has issued three opinions regarding statutory construction. And in each of those opinions, the Court instructed other courts to look at the plain language of the statute first. And as indicated, there is nothing in the plain language of this statute that includes this unwritten intent element that the defendant argues for. Indeed, the language incorporates, as this Court noted in ROM, well-known concepts of possession and receipt. Do you think Congress made a mistake? I do not think that, Your Honor. Why then is it punishing receipt with a mandatory minimum of five years and possession that does not, when if you have possession, you're going to have receipt because you have to have received it? Receipt requires the government to demonstrate that a higher level of engagement in child pornography. In Davenport- Say what you mean, higher level of engagement. If I possess it, did I not at some earlier time receive it? No, there are instances where you can knowingly possess something but not knowingly receive it. And in Davenport, this court indicated that receipt is a knowing acceptance. In ROM, the court noted that the defendant had sought out child pornography and exercised dominion and control over it. For example, in the last submission, this court noted that you receive unintended emails. If you receive an email from somebody that you do not know, and there's an attachment and no indication of what's in the attachment. If you download the attachment and it's child pornography, the government could not demonstrate that you've knowingly received it. You have, however, are possessing the child pornography. And the statute contemplates this unintentional receipt and unwitting possession. In that instance, you are guilty of possessing child pornography. Would the government prosecute me in that instance? Where it was said as an attachment, I open the attachment, I receive it. I don't know how to get rid of it. Maybe if somebody technically adept could get it off the hard drive, I don't know how to do it. Am I guilty? The government would not be able to demonstrate knowing receipt. Would it be able to demonstrate possession? It would be able to demonstrate possession. However, the statute contemplates an affirmative defense in that instance. If you download less- Then what's the practical difference between receipt and possession, if there's an affirmative defense to possession? The fact that I didn't know what I was getting, and I didn't know how to get rid of it, even though I might have wanted to. Well, again, the definition of receipt is a more active engagement in the child pornography distribution chain. The most compelling evidence of the legislative intent of whether Congress intended to impose this additional element of receipt, is the fact that it eliminated it. Since that time, Congress has amended the statute on numerous occasions, and it has not sought to impose this intended receipt. Let me ask you a different question. And you've already heard me respond to the others. I have trouble getting around the fact that the word receives, it sits there all by itself. And we're being asked to add words to receive, they're clearly not in the statute. So I'm asking, you understand where I'm coming from with this question. What's the actual practice in terms of prosecution? That is to say, when does the US attorney decide to prosecute for rather than for possession? And as a de facto matter, is the US attorney prosecuting for receipt when there is more than mere receipt, when there's some evidence, for example, of seeking to redistribute, or does the US attorney simply prosecute? If I can show he's received it, I'm going to go after him for receiving it. Well, there are definitely guidelines that the US attorney uses in deciding whether to prosecute receipt. In this case, the defendant registered to a fee-based subscriber called Petoland, where there was sharing and distribution and downloading of child pornography. There were- I didn't quite ask about what's going on in this case. I asked about what the guidelines are, and you said there are some. What are they? I believe that if the government can demonstrate that there is knowing receipt, and that there are a certain amount of images. And I'm sorry, I don't know exactly what those guidelines are. Okay. As in Dean, as noted by Justice Sikuta, the statutory scheme, like the statutory scheme in Dean, demonstrates that Congress knew how to impose the intent element for receipt, whereas the statutory construct further demonstrates that there's no intent element for receipt. In one of the subsections of the Child Pornography Statute, if the government can demonstrate that a person possessed with the intent to sell, they're also subject to the mandatory minimum. Ms. Carey, can you give me an example of where the government would indict under A2 for receipt? And not indict for possession? I cannot. I think that receipt necessarily includes possession, as this court noted in Davenport, but the converse is not true. Your Honor's asked about other circuits, and I believe that there's a Tenth Circuit case that holds that circumstance, that receipt includes possession, but possession does not necessarily include knowing receipt. So are we bound by our other cases that say downloading is receiving and possessing, that possessing is a lesser included offense of receiving? All of those seem to go to the question of whether receiving and possessing means similar overlapping offenses. Yes, this court is bound by Moorbacher, Rahm, Davenport, and Kuczynski. And if you recall in Kuczynski, that was an example of an instance where the defendant possessed the cachet files. But this court found that as a sentencing enhancement, the government could not include a certain amount of the child pornography because it couldn't prove that he knowingly received and possessed them. There was none of the evidence that was present, for example. Well, what about the argument that the opposing counsel makes, that we've never ruled on this specific issue, never inquired about whether Congress intended to have that language with intent to distribute in it? That is true. Neither the government nor the defendant have cited cases that support that there's an intent element in receipt. However, the cases in which this court has, for example, Rahm, Kuczynski, and Davenport, this court has looked at the statutory construction. It's looked at the legislative history in depth. And there's no indication in any of those cases that there is an additional intent element that should be imposed and written into the statute. And again, the most compelling evidence that this intent element exists, or doesn't exist, is the fact that Congress has already eliminated it and hasn't sought to reimpose it. In each case in which Congress has amended this statute, it sought to expand to criminalize the behavior that leads to the propagation of child pornography, and imposing the mandatory minimum on someone who knowingly receives child pornography, who seeks out child pornography, and knowingly accepts it and exercises dominion and control over it, effectuates the statutory purpose. If there are no further questions, I submit. Thank you. Okay, thank you. Ms. Baggio, we took you over. Would you like a moment to respond? Yes, please. Thank you, Your Honor. Let's start out with a minute, but let's just see what you need to say. Thank you, Your Honor. I agree that if we read the clause in isolation, there isn't anything in the plain language of the statute to require more consideration. But there isn't just this one clause in the statute, there are six. And there is not a mandatory minimum sentence for only one of those six. And I say that that is a distinction that makes a difference. The court has referred to Congress perhaps making a mistake in the way that it amended the statute. I would suggest that that mistake leaves the court with an ambiguity about who should be covered and who shouldn't. Once we look to legislative history, there's no question as to what Congress's intent was. It was to penalize people who knowingly receive for distribution or distribute. The court's concerns about, stated with the opposing counsel, about adding words to the statute, this is not an unprecedented event. Both in the Dubot case, in the Keith case, the court discussed judicially required elements. And I think also the excitement video case by the Supreme Court is also important because the court there said, despite the Ninth Circuit's grammatically correct reading of the statute, we look at the statute and its purpose and the legislative history to determine how far down the knowingly element should apply. Thank you. Okay, thank you. Thank both sides for very nice arguments. The case of United States versus Olander is now submitted for decision. The next case on the argument count is United States versus Thomsey.
judges: Fletcher W. , Bea, Ikuta